IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRENDAN BEARDSLEY<br>NICOLE HOLLNER<br>SUSAN TRAVER<br>CHRISTOPHER ALONZO<br>CRAIG ANTHONY<br>MARION BASSETT<br>KYLE BELL<br>AMY BERLIN<br>TIFFANY BERTRAND<br>JOHN BLANCHARD<br>PHILIP BROUSSEAU<br>MEAGAN BROWNELL<br>ANDREW BURKE<br>MATTHEW BURKE<br>ADAM BURRELL<br>COLIN CAMPBELL<br>DOUGLAS CATLIN<br>KRISTINE CAUWENBERGHS<br>THOMAS CENTERBAR<br>ROSE COLANGIONE<br>RICHARD COLLODI<br>IDELLE COLON<br>HANNAH COLTRAIN<br>AIDEN COY<br>LISA CROSS<br>BENJAMIN CUTTITA<br>SCOTT DELAURIE<br>JON DEUEL<br>RAYMOND DORIA<br>DERRICK DOWD<br>DANIEL DUNN<br>KRISTOFER DUNN<br>NICKOLAS DUNN<br>CHARLES DYER<br>REID EMANATIAN<br>EVAN FAIRCLOUGH<br>ASHLEY FINK<br>MCKENNA FRANK | Case No. 1:23-CV-1641 (TJM/ML)<br><br>**COMPLAINT**<br><br>(Jury Trial Demanded) |

DEBRA FRANZA
STEVEN GAINES
TANNER GAMACHE
ALEXANDER GRANGER
MATTHEW GREEN
JORDAN GUERRERO
KURT HAAS
SUSAN HEGGEN
JASON HEWITT
LAWRENCE HOTMER
NATHAN HOWE
AIDEN HUNSINGER
MARCUS HUNSINGER
TRISHA JANSEN
TIMOTHY JOHNSTON
NIKLAS KAPLAN
SCOTT KELLY
CAITLIN KLAUS
GRIFFIN KUHN
DARYL LABAFF
ROBERT LECLAIR
JENNIFER LESCOVICH
NARISSA LIPTAK
IRENA LONGWORTH
SHENNON LUCIA
THOMAS LUNDQUIST
CHRISTOPHER MALONEY
WILLIAM MARSHALL
COURTNEY MARSTON
MICHAEL MILLINGTON
SCOTT MILLINGTON
MICHAEL MULLER
CHELSEA NOVAK
KATIE OGILVIE
JOSHUA OTTEN
WAYNE PALMATIER
ADAM POTTER
CHRISTOPHER RHODES
MICHAEL RHODES
DAVID RODRIGUEZ
STEPHANIE SAN ANTONIO

CHARLES SOVERN
RONDA STOCKMAN
ANTHONY TAYLOR
TAMMY TEAL
THOMPSON TEMPLE
MICHAEL TORRANCE
MELISSA TOWERS
DAVID TREVENEN
MALGORZATA TUZNIK
SCOTT VERMILYEA
SCOTT WAGNER
IAN WARREN
ANTHONY WASIYO
JAMIE WELCOME
TINA WESTAD
MICHAEL WETHERBY
SHAWN WHITAKER

  Plaintiffs,

  v.

COUNTY OF SARATOGA,

  Defendant.

## COMPLAINT

Plaintiffs, by and through their counsel, the law firm of McGillivary Steele Elkin LLP, and the law firm of Isaacs Devasia Castro & Wein LLP, for their Complaint against the County of Saratoga, New York ("Defendant" or "County"), state as follows:

### INTRODUCTION

1.    Plaintiffs are current and former employees of the Defendant, County of Saratoga, New York, who work or have worked as Civil Clerks, Corrections Officers, Corrections Sergeants, Desk Officers and/or Desk Sergeants in the Saratoga County Sheriff's Department. Plaintiffs bring

this action for a declaratory judgment, back pay, and other relief pursuant to 29 U.S.C. § 207, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331 to remedy the Defendant's willful and unlawful violations of federal law complaint of herein.

2. Plaintiffs bring this action against Defendant as a collective action in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA) because of Defendant's unlawful deprivation of Plaintiffs' right to overtime compensation under the FLSA. The Plaintiffs are similarly situated to each other because they have been subject to the same policies and/or practices that violate the FLSA whereby the Defendant suffered or permitted Plaintiffs to perform uncompensated overtime work before and/or after their paid shifts. Plaintiffs are also similarly situated to each other because they have been subject to the same polices and/or practices that violate the FLSA whereby the Defendant fails to properly calculate the regular rate of pay upon which Plaintiffs' overtime rate is based and fails to pay overtime compensation in a timely manner.

**PARTIES**

3. Plaintiffs, who are listed in Exhibit A, have given their written consent to be Party-Plaintiffs in this action pursuant to 29 U.S.C. § 216(b). The written consent forms attached as Exhibit A set forth each Plaintiff's name and address.

4. Each of the Plaintiffs in this action, while employed by Defendant, has been an "employee" within the meaning of FLSA, 29 U.S.C. § 203(e)(1).

5. Defendant County of Saratoga is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). The County of Saratoga has a principal office and place of business located at 40 McMaster Street, Ballston Spa, New York 12020.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b)

7. Venue is proper in the Northern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts, events, or omissions given rise to the claim occurred in this District.

**FACTS**

8. Plaintiffs are, and at all times material herein have been, employed by the County of Saratoga as United Public Service Employees Union (UPSEU) bargaining unit employees in positions as Civil Clerk, Corrections Officer, Corrections Sergeant, Desk Officer, and/or Desk Sergeant within the Saratoga County Sheriff's Department.

9. The County of Saratoga and UPSEU have entered into an agreement set forth in a Collective Bargaining Agreement.

10. For example, at all times material herein, Plaintiff Brendan Beardsley has worked for Defendant as a Corrections Officer. In this position, his principal job duties include, but are not limited to, maintaining the safety and security of the Saratoga County Correctional Facility, and supervising and monitoring inmates.

11. For further example, at all times material herein, Plaintiff Nicole Hollner has worked for Defendant as a Desk Officer. In this position, her principal job duties include, but are not limited to, answering and dispatching 911, police, fire, and EMS calls, and assisting officers with tasks such as running license plates or warrant searches.

12. For further example, at all times material herein, Plaintiff Susan Traver has worked for Defendant as a Civil Clerk. In this position, her principal job duties, include, but are not limited to, processing papers for service of process, evictions, garnishments, and other civil matters.

13. While working as Corrections Officers and Corrections Sergeants (hereinafter jointly referred to as Corrections Officers/Sergeants), and Desk Officers and Desk Sergeants (hereinafter jointly referred to as Desk Officers/Sergeants), Plaintiffs and all others similarly situated are regularly scheduled to work at least 40 hours a week. Specifically, each week, they are regularly scheduled to work five shifts of eight hours. Corrections Officers/Sergeants and Desk Officers have scheduled shifts from 8:00 am – 4:00 pm, 4:00 pm – 12:00 am, and 12:00 am – 8:00 am. Desk Sergeants have scheduled shifts from 7:00 am – 3:00 pm, 3:00 pm – 11:00 pm, and 11:00 pm – 7:00 am.

14. Because of the nature of the Corrections Officer/Sergeants and Desk Officer/Sergeants work, such posts must be manned for 24 hours a day. Thus, Plaintiffs who work in these positions cannot leave their posts without proper relief from the oncoming Officer/Sergeant.

15. While working as Civil Clerks, Plaintiffs and all others similarly situated are regularly scheduled to work at least 37.5 hours each week. Specifically, each week, they are regularly scheduled to work five shifts of eight hours, inclusive of a 30-minute unpaid meal period. Civil Clerks have scheduled shifts from 9:00 am to 5:00 pm. However, Plaintiffs regularly work at least five hours of preapproved, compensated overtime each week, resulting in Plaintiffs' working at least 40 hours of compensated time each week.

16. Defendant utilizes manual timecards in which Plaintiffs and all others similarly situated must use to punch in and out of a traditional time clock. If any employee needs to make any notation or indicate a change of their hours, such as when they switch a shift, use compensatory time, take leave, or identify certain shifts as overtime hours, they must do so by hand on their timecard prior to the end of the two-week pay period. Timecards are collected by the County once

6

every two weeks, at which time the Plaintiffs are issued a blank timecard for the use during the next pay period.

17. Upon information and belief, all other Departments within the County of Saratoga utilize the automated timekeeping system called Kronos. However, the Saratoga County Sheriff's Department fails to use Kronos even though the County has installed the Kronos electronic timeclocks in Department facilities.

18. Plaintiffs and all others similarly situated are not permitted to clock in until seven minutes prior to the start of their scheduled shift time regardless of whether they begin working earlier. When Plaintiffs and all others similarly situated clock in seven minutes prior to the start of their scheduled shift, the Defendant's policy is to round the time for purposes of pay down to 0 minutes. Thus, if a Plaintiff's shift begins at 4:00 pm, and they clock in at 3:53 pm, their time will be recorded for purposes of pay as starting at 4:00 pm. However, Plaintiffs' timecards will reflect the exact minute they punch in.

### *Uncompensated Work Performed by Plaintiffs and All Others Similarly Situated*

19. While working for the Saratoga County Sheriff's Department, Plaintiffs and all others similarly situated routinely work over 40 hours a week because they frequently work overtime in addition to their regularly scheduled hours performing their regular job duties. Plaintiffs are not fully compensated for these additional hours.

20. Plaintiffs and all others similarly situated are not allowed to clock in until seven minutes before the start of their scheduled shift because Defendant's timekeeping policy is to round any time that is seven minute or less to zero minutes for purposes of pay even if work is performed during those seven minutes. Further, Plaintiffs and all others similarly situated routinely perform work before and after the start of their regularly scheduled shift, including time which is off-the-

7

clock as a result of Defendant's timekeeping policies and practices since it occurs more than 7 minutes before the official start of their shift or more than 7 minutes after the end of their official shift end time.

21. In weeks in which Plaintiffs are scheduled to work a minimum of 40 hours per week, this work causes Plaintiffs to work in excess of 40 hours in each week because it occurs in addition to the work performed during their regularly scheduled shift hours. As such, Plaintiffs and all others similarly situated regularly work these additional uncompensated hours in workweeks in which they work over 40 hours.

22. While working as Corrections Officers/Sergeants and Desk Officers/Sergeants for the County of Saratoga, Plaintiffs and all others similarly situated routinely work over 40 hours a week. Such employees are scheduled to perform a minimum of 40 hours of work per workweek.

23. All Corrections Officers/Sergeants and Desk Officers/Sergeants are similarly situated and routinely work more than 40 hours in a workweek but are denied proper compensation for hours worked in excess of 40, because Corrections Officers/Sergeants and Desk Officers/Sergeants are scheduled to work a minimum of 40 hours per week but Defendant fails to compensate them for daily pre-shift and post-shift work.

24. For example, Plaintiff Brendan Beardsley routinely works more than 40 hours in a workweek as a Corrections Officer. When Plaintiff Beardsley works more than 40 hours, Defendant fails to compensate him for all of his work time. Specifically, Defendant has failed to compensate Plaintiff Beardsley for overtime work it suffered or permitted him to perform at all times he was assigned to work as schedule of 4:00 pm to 12:00 am. On these occasions, Plaintiff Beardsley routinely arrives approximately 15-20 minutes prior to the start of his scheduled shift and begins performing work tasks such as changing into his mandated uniform and putting on

required equipment such as a duty belt and radio. Plaintiff is not permitted to change into his uniform at home or to wear his uniform outside of the workplace. Plaintiff Beardsley is not permitted to clock in, however, until seven minutes before his shift starts, or until 3:53 pm. After Plaintiff Beardsley clocks in, he proceeds to pick up any additional required equipment such as keys, and proceeds to his post where he performs an information exchange with the outgoing Corrections Officer. All of Plaintiff Beardsley's work time prior to 4:00 pm is unpaid pursuant to Defendant's policies and practices. Additionally, Plaintiff Beardsley routinely clocks out approximately 15-20 minutes after 12:00 am, as he is required to perform a shift exchange with the oncoming Corrections Officer, return equipment, and change out of his uniform before leaving the workplace; this time is also unpaid pursuant to Defendant's policies and practices because defendant requires him to clock out 7 minutes or fewer after the end of his shift so that his time is rounded down to 0 and he is not paid for it. Thus, Plaintiff Beardsley is not compensated for at least approximately two hours and 30 minutes and as much as three hours and 20 minutes of additional overtime work beyond his scheduled shift per week.

25. For example, Plaintiff Nicole Hollner routinely works more than 40 hours in a workweek as a Desk Officer. When Plaintiff Hollner works more than 40 hours, Defendant fails to compensate her for all of his work time. Specifically, Defendant has failed to compensate Plaintiff Hollner for overtime work it suffered or permitted her to perform at all times she was assigned to work as schedule of 4:00 pm to 12:00 am. On these occasions, Plaintiff Hollner routinely arrives approximately 15-20 minutes prior to the start of her scheduled shift and begins performing work tasks such as changing into her mandated uniform. Plaintiff is not permitted to change into her uniform at home, or to wear her uniform outside of the workplace. Plaintiff Hollner is not permitted to clock in until seven minutes before her shift starts, or until 3:53 pm. After Plaintiff Hollner

clocks in at 3:53 pm, she proceeds to her workstation, conducts a briefing with the outgoing Desk Officer, and logs into the numerous systems and computers used to perform her regular job duties. All of Plaintiff Hollner's work time prior to 4:00 pm is unpaid pursuant to Defendant's policies and practices. Additionally, Plaintiff Hollner routinely clocks out approximately 10-15 minutes after 12:00 am, as she is required to perform a shift exchange with the oncoming Desk Officer and change out of her uniform; this time is also unpaid pursuant to Defendant's policies and practices. Thus, Plaintiff Hollner is not compensated for at least approximately two hours and 5 minutes and as much as two hours and 55 minutes of additional overtime work beyond her scheduled shift per week.

26. While working as Civil Clerks for the County of Saratoga, Plaintiffs and all others similarly situated work over 40 hours in a week in weeks when they work at least 2.5 hours of additional overtime. Civil Clerks are denied proper compensation during workweeks when they work at least 2.5 hours of overtime because Defendant fails to compensate them for daily pre-shift and post-shift work.

27. For example, Plaintiff Susan Traver works more than 40 hours per week as a Civil Clerk in weeks in which she works at least 2.5 hours of overtime. When Plaintiff Traver works more than 40 hours in a week, Defendant fails to compensate her for all of her work time. Specifically, Defendant has failed to compensate Plaintiff Traver for overtime work it suffered or permitted her to perform at all times she was assigned to work a schedule of 9:00 am to 5:00 pm. On these occasions, Plaintiff Traver routinely arrives approximately 10-12 minutes prior to the start of her scheduled shift and immediately begins working. However, Plaintiff Traver is not permitted to clock in until seven minutes before her shift starts at 8:53 am. After Plaintiff Traver clocks in at 8:53 am, she proceeds to her workstation and logs into the numerous systems and
10

computers. All of Plaintiff Traver's work time prior to 9:00 am is unpaid pursuant to Defendant's policies and practices. Additionally, Plaintiff Traver routinely continues to work until approximately 5-10 minutes after 5:00 pm, as the demands of the job require her to finish up any last-minute requests and log out of all the computer systems; this time is also unpaid per Defendant's policies and procedures. Thus, Plaintiff Traver is not compensated for at least approximately one hour and 15 minutes and as much as one hour and 50 minutes of additional overtime beyond her scheduled shift in weeks when she is assigned to work the schedule noted above and also works at least 2.5 additional hours of overtime.

28. All Plaintiffs employed by Defendant are similarly situated and routinely work more than 40 hours in a workweek but are denied proper compensation for hours worked in excess of 40, because Defendant fails to compensate Plaintiffs for daily pre-shift and post-shift work.

### *The Rate at Which Overtime is Paid to Plaintiffs and All Others Similarly Situated*

29. During the last three years, Plaintiffs and all others similarly situated have received certain payments for their work, including but not limited to shift differentials, longevity pay, retroactive pay increases, and cash payments made to employees who opt out of the County's health insurance coverage. These payments are made pursuant to the Collective Bargaining Agreement or County or Department policy, and thus they are paid to Plaintiffs and all others similarly situated. However, on occasions when Plaintiffs work and are paid overtime compensation, Defendant fails to include these payments in the regular rate of pay which is used to calculated overtime payments owed to Plaintiffs.

30. Defendant fails to include the payments described herein in the calculation of the regular rate of pay of Plaintiffs and all others similarly situated pursuant to a systematic, County-wide practice. The failure to include these payments in Plaintiffs' regular rate means that when

11

Plaintiffs received paid overtime for working in excess of 40 hours a week, they have been paid at a rate for those overtime hours that is below the rate mandated by the FLSA.

31. For example, according to the Collective Bargaining Agreement, the City will provide health insurance to employees and pay a percentage of the total costs of the insurance for each employee. In exchange for this coverage, employees who opt-in to the health insurance coverage contribute the remaining percentage of the total employee costs per month out of their paycheck. The City then pays the insurer for the employees' health coverage.

32. Under the Collective Bargaining Agreement, Plaintiffs and all others similarly situated have the option to either opt in or, if they have other health care coverage through their spouses or parent's employer, or for other reasons, opt out of the health insurance coverage,

33. Employees who elect to opt out of health care coverage receive cash payments from the County. A member who is eligible but opts out of will receive $150 per month, placed in a Trust Account. The employee will receive the funds accumulated at the end of the year from the County. All of this money is recorded as taxable income to the employees.

34. In *Flores v. City of San Gabriel*, the Ninth Circuit Court of Appeals held that cash-in-lieu of benefits payments made to employees who opt-out of employer-provided health insurance cannot be excluded from the regular rate of pay under the Fair Labor Standards Act. 824 F.3d 890, 902 (9th Cir. 2016).

35. Additionally, the U.S. Department of Labor announced that cash payments made to employees who decline to participate in an employer-sponsored benefits plan, like health insurance, are not excludable from the regular rate of pay, consistent with the Ninth Circuit's holding in *Flores. See* Regular Rate Under the Fair Labor Standards Act, 84 Fed. Reg. 68736, 68761 (Dec. 16, 2019) (cash payments in lieu of benefits are not excluded from the regular rate as

"such cash payments are made directly to the employee, and so fail to satisfy the requirement under FLSA section 7(e)(4) that contributions be made by an employer to a trustee or third person. Nor are cash-in-lieu of medical benefits generally excludable under the 'other similar payments' clause of section 7(e)(2)") (internal quotations omitted).

36. Plaintiffs and all others similarly situated have been exercising their option to receive the cash payment in lieu of participating in the County's health insurance. However, the County excludes any cash payments made for opting out of health insurance coverage when it calculates the Plaintiffs' regular rates of pay for purposes of paying the Plaintiffs' overtime compensation.

37. The cash payments made in lieu of health insurance benefits are not made to a trustee or third party, but rather, directly to the employees who choose to opt out. Therefore, these cash in lieu of benefits payments do not meet the requirements under the FLSA to be excluded from the regular rate of pay.

38. For further example, in June of 2022, the UPSEU and Defendant negotiated and entered into a new Collective Bargaining Agreement that applied retroactively to January 1, 2020, and on May 17, 2023, a Memorandum of Understanding was entered into to amend the existing Agreement.

39. The Collective Bargaining Agreement entered into provides that all wage increases shall be retroactive to January 1, 2020, and shall be paid to bargaining unit members within ninety (90) days of ratification of the Agreement.

40. The Memorandum of Understanding provides for additional wage increases retroactive to January 1, 2023, to be made 30 days after ratification.

41. Upon information and belief, the County paid these retroactive pay increases to Plaintiffs and all others similarly situated in the form of a lump sum.

42. For further example, the applicable Collective Bargaining Agreement provides for longevity pay increases to be paid to Plaintiffs. However, when Defendant pays Plaintiffs overtime during periods in which they received longevity pay, Defendant fails to include the longevity payments in calculating Plaintiffs' regular rates of pay.

43. Defendant knew or should have known of its obligation to include these payments and benefits in Plaintiffs' regular rate of pay but nevertheless failed to do so. By failing to include these and other payments in the regular rate of pay, Defendant failed to pay Plaintiffs and all others similarly situated for all hours worked over 40 in a workweek at the proper overtime rate of one- and one-half times their regular rate of pay.

44. Defendant fails to include the payments described above, as well as other payments paid to Plaintiffs in addition to their regular hourly rate of pay, in the calculation of the regular rate of pay of Plaintiffs and all others similarly situated pursuant to a systematic, County-wide practice. The failure to include these payments in Plaintiffs' regular rate means that when Plaintiffs receive paid overtime for working in excess of 40 hours a week, they are paid at a rate for those overtime hours that is below the rate mandated by the FLSA.

45. Defendant acted voluntarily and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and all others similarly situated in accordance with the FLSA.

46. All Plaintiffs who receive such payments pursuant to the Collective Bargaining Agreement are similarly situated and routinely work more than 40 hours in a workweek but are denied proper compensation for hours worked in excess for 40 because Defendant continues to fail to include these payments in the regular rate of pay upon which the Plaintiffs' overtime rate is

based. The precise amount of improperly paid overtime received by each Plaintiff can be identified through the Defendant's payroll and timekeeping records, and through other work and pay records.

### *Late Payment of Overtime Worked*

47. In those instances in which Defendant has compensated Plaintiffs and those similarly situated for working in excess of 40 hours a week, Defendant routinely pays Plaintiffs for their overtime work more than one pay period after the date that Plaintiffs have been paid for their non-overtime work hours that week (i.e., more than two pay periods after the overtime was worked) through no fault of the Plaintiffs. The delay in payment is because of managerial delays or for other reasons that are unrelated to the County's ability to determine the amount of overtime compensation that is owed to the Plaintiffs.

48. For example, Plaintiff Beardsley worked overtime hours in the pay period ending June 9, 2023, and contacted Defendant to add the necessary notation to his timecard consistent with Defendant's policies and practices. Despite numerous follow-ups by Plaintiff, to date, Plaintiff Beardsley has not received a response and has not been paid for the overtime he worked during the pay period ending June 9, 2023.

49. All Plaintiffs are similarly situated and routinely work more than 40 hours in a workweek but are routinely compensated for overtime work in an untimely manner. The precise amount of untimely paid overtime received by Plaintiffs can be identified through the Defendant's timekeeping system and payroll records, and through other work and pay records.

### **COUNT I**

**FAILURE TO PAY OVERTIME FOR ALL HOURS PLAINTIFFS ARE SUFFERED OR PERMITTED TO WORK IN VIOLATION OF SECTION 7(A) OF THE FLSA**

50. Plaintiffs hereby incorporate paragraphs 1 through 49 in their entirety.

51. At all times material herein, during those workweeks in which Plaintiffs have worked hours in excess of 40 a week, they have performed work activities without compensation before the start of their shifts and after the end of their scheduled shifts. This pre-shift and post-shift work has caused Plaintiffs to work in excess for 40 hours in a given week, but Plaintiffs do not receive full pay for these additional hours. Accordingly, as a result of these pay practices, Defendant has failed to provide Plaintiffs with the rights and protections provided under section 7(a) of the FLSA, 29 § U.S.C. 207(a).

52. Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein. In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all hours employees are suffered or permitted to work in excess of 40 hours per week. Defendant has failed to comply with the overtime pay requirements of the FLSA by failing to compensate Plaintiffs and all others similarly situated for work that they have been suffered or permitted to work before the official start time of their shifts and after the end of their scheduled shifts.

53. As a result of Defendant's willful and purposeful violations of the FLSA, there have become due and owing to the Plaintiffs and all others similarly situated an amount that has not yet been precisely determined. The employment and work records for Plaintiffs are in the exclusive possession, custody, and control of the Defendant, and Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to Plaintiffs from which the amount of Defendant's liability can be ascertained.

54. Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their backpay damages for Defendant's failure to pay overtime compensation as alleged herein.

55. Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT II

### FAILURE TO PROPERLY CALCUATE THE REGULAR RATE OF PAY FOR PLAINTIFFS IN VIOLATION OF SECTION 7 OF THE FLSA

56. Plaintiffs hereby incorporate paragraphs 1 through 49 in their entirety.

57. Section 207(a) of the FLSA, 29 U.S.C. § 207(a), as well as the regulations of the U.S. Department of Labor, 29 CFR Part 778, *et seq.*, require that all forms of remuneration be included in the rate at which FLSA overtime is paid, with some limited exceptions not applicable here. Defendant has failed to include certain payments, including but not limited to longevity pay, shift differentials, retroactive pay increases, and cash payments made for opting out of health insurance benefits, in Plaintiffs' regular rates of pay which is used to compute the overtime pay entitlements of Plaintiffs and all others similarly situated. This practice results in Defendant paying Plaintiffs for overtime work at a rate that is below the rate mandated by the FLSA.

58. As a result of Defendant's systemic, continuing, willful, and purposeful violations of the FLSA, there have become due and owing to Plaintiffs and all others similarly situated an amount that has not yet been determined. The employment and work records for the Plaintiffs and all others similarly situated reflecting such ongoing violations are in the exclusive possession, custody, and control of Defendant and its public agencies, so Plaintiffs are unable to state at this time the exact amount owing to them. Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve

payroll and other employment records with respect to the Plaintiffs and all others similarly situated form which the amount of Defendant's liability can be ascertained.

59. Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their backpay damages for the Defendant's failure to pay proper overtime compensation.

60. Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT III

### FAILURE TO PAY FLSA OVERTIME IN A TIMELY MANNER BY PAYING FOR OVERTIME WEEKS OR MONTHS AFTER THE OVERTIME WAS WORKED

61. Plaintiffs hereby incorporate paragraphs 1 through 49 in their entirety.

62. The FLSA mandates that overtime compensation is paid on the regular payday for the period in which such workweek ends. Overtime payments under the FLSA may not be delayed except as reasonably necessary to compute the amount owed, and in no event shall such payments be delayed beyond the next payday after such computation can be made. 29 C.F.R. § 778.106. Defendant has violated these basic principles by delaying Plaintiffs' overtime payments for working in excess of 40 hours a week.

63. As recently stated in *Accosta, et al. v. Lorelei Events Grp. Inc., et a.*, No. 7:17-cv-07804-NSR (S.D.N.Y. Jan. 21, 2022), "while 'the Second Circuit has no bright line rule for determining what qualifies as an 'unreasonable' amount of time for an employer to delay paying its employees,' several courts have held that it is a violation of the FLSA to withhold employees overtime such that 'two weeks is an unreasonable amount of time for an employer to delay a paycheck.'" (quoting *Coley v. Vanguard Urban Improvement Ass'n, Inc.*, No. 12-CV-5565 (PKC), 2018 U.S. Dist. LEXIS 50787 (E.D.N.Y. Mar. 29, 2018)). Here, Defendant's failure to pay

18

Plaintiffs FLSA overtime pay in a timely manner and their withholding of such overtime payments violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.106.

64. As a result of Defendant's willful and purposeful violations of the FLSA, there have become due and owing to the Plaintiffs and all others similarly situated an amount that has not yet been precisely determined. The employment and work records for Plaintiffs are in the exclusive possession, custody, and control of the Defendant, and Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to Plaintiffs from which the amount of Defendant's liability can be ascertained.

65. Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their backpay damages for Defendant's failure to pay overtime compensation as alleged herein.

66. Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand that their claims be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs hereby pray that this Court:

(a) Order a complete and accurate accounting of all compensation to which the Plaintiffs and all others similarly situated are entitled;

(b) Award Plaintiffs and all others similarly situated monetary liquidated damages equal to their unpaid compensation;

(c) Award Plaintiffs and all others similarly situated interest on their unpaid compensation;

(d) Award Plaintiffs and all others similarly situated their reasonable attorneys' fees to be paid by the defendant, and the costs and disbursements of this action; and

(e) Grant such other relief as may be just and proper.

DATE: December 27, 2023                                     Respectfully submitted,

/s/ Sarah M. Block
Sarah M. Block
Gregory K. McGillivary
Rachel Lerner
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., N.W., Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
smb@mselaborlaw.com
gkm@mselaborlaw.com
rbl@mselaborlaw.com

/s/ Steve Isaacs
Steve Isaacs
ISAACS DEVASIA CASTRO & WIEN LLP
80 Broad Street, 5th Floor
New York, NY 10004
Phone: (917) 551-1300
sisaacs@idcwlaw.com