**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRENDAN BEARDSLEY, et. al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )   Case No. 1:23-CV-01641 (TJM/ML) |
| | ) |
| COUNTY OF SARATOGA, | ) |
| | ) |
|     Defendant. | ) |
| | ) |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR SUMMARY JUDGMENT AS TO LIABIILTY**

## TABLE OF CONTENTS

I. Defendant Cannot Rely on Conclusory Statements to Defeat Summary Judgment ................... 1

II. There is No Genuine Dispute that Plaintiffs Perform Compensable Pre-Shift Work ................ 1

III. Defendant had Actual and Constructive Knowledge of Pre-Shift Work ................................. 4

IV. The County Fails to Establish a Genuine Dispute that they Failed to Properly Calculate the Regular Rate of Pay for Overtime ................................................................................................. 7

V. Plaintiffs Are Entitled to Summary Judgment on the Late Payment Claim .............................. 8

VI. Defendant Fails to Create a Genuine Issue of Material Fact as to Whether Plaintiffs are Entitled to Liquidated Damages.................................................................................................... 9

VII. Conclusion............................................................................................................................ 10

Plaintiffs respectfully submit this Reply Memorandum in Support of Plaintiffs' Motion for Summary Judgment. Because the County's arguments are without merit and fail to establish genuine issues of material fact, Plaintiffs are entitled to summary judgment on liability.

## I. Defendant Cannot Rely on Conclusory Statements to Defeat Summary Judgment

To defeat a motion for summary judgment, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute over a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant cannot "rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 274 F.3d 423, 428 (2d Cir. 2001). The non-movant must cite to "particular parts of materials in the record" in opposing summary judgment. Fed. R. Civ. P. 56(c); Local Rule 56.1(b) ("Each denial shall set forth a specific citation to the record where the factual issue arises."); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) ("unsupported allegations do not create a material issue of fact").

Throughout Defendant's Response to Plaintiffs' Statement of Material Facts, Dkt. 45-1 ("Def. Response to SOF"), and Defendant's Memorandum in Opposition to Motion for Summary Judgment, Dkt. 45 ("Def. Opp."), Defendant relies on conclusory statements or unsupported blanket denials of liability with either no citations to record evidence, or with citations that fail to establish genuine issues of material fact. This is wholly insufficient to survive summary judgment.

## II. There is No Genuine Dispute that Plaintiffs Perform Compensable Pre-Shift Work

Under the Fair Labor Standards Act (FLSA), an employer must pay employees for all work that is "suffered or permitted." 29 U.S.C. § 203(g). To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that they performed work for which they were not properly compensated and that their employer had actual or constructive knowledge of that work.

1

*Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 361 (2d Cir. 2011). Whether such work is required or whether plaintiffs were instructed to perform this work is irrelevant – it only matters for purposes of liability that they were suffered or permitted to do so.[1]

Without support, Defendant states that "pre-shift work is not being performed by Plaintiffs," Def. Opp. at 3; Def. Response to SOF ¶ 162, and that it is "not the case" that Plaintiffs are not compensated for pre-shift work. Def. Opp. at 3.[2] Defendant ignores that Plaintiffs ***universally*** offered unrebutted testimony establishing that they: 1) arrive prior to the start of their scheduled shift; 2) perform compensable work tasks prior to the start of their scheduled shift; 3) are not permitted to clock in until 7 minutes prior to their shift; and 4) are not paid for any pre-shift work time, whether on or off the clock. SOF ¶¶ 38-55, 61-64, 81-86, 91-105, 118-128.

Presenting no evidence, Defendant instead, in its responses to Plaintiffs' Statement of Material Facts, repeats the same denials: that "Plaintiffs are required to punch in using the time clock prior to performing any job function," Def. Response to SOF ¶¶ 38-41, 44, 49-51, 53, 55, 61-63, 65 (Corrections Plaintiffs), and that "Plaintiffs are not permitted to perform work activities prior to punching in with the time clock," *id.* ¶¶ 79, 82, 91, 93, 95-96, 103, 105, 110, 119, 127, 130

---

[1] Defendant cites only to *Fangrui Huang v. GW of Flushing I, Inc.*, Def. Opp. at 3-4, but this case is distinguishable. There, the Court held the plaintiff failed to show knowledge because there was no evidence that his employer knew he was working post-shift. 2021 WL 54085, at *6 (E.D.N.Y. Jan. 6, 2021). Here, Plaintiffs have submitted ample evidence showing Defendant's actual *and* constructive knowledge of pre-shift work (although only one is required). *See supra* Section III; Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment ("Pl. Brief"), Dkt. 42-1, at 16-19; Plaintiffs' Statement of Material Facts ("SOF"), Dkt. 42-2, ¶¶ 131-138.

[2] Defendant specifically argues about the compensability of only one of the pre-shift work tasks at issue – changing into the uniform – albeit, without citing any relevant caselaw. Def. Opp. at 3. As set forth in Plaintiffs' Motion, changing into the uniform *is* compensable. Moreover, the law requires that Plaintiffs be paid for all time in the continuous workday, meaning that when Plaintiffs perform other compensable tasks before putting on their uniform such as logging into computers or a shift briefing, thereby starting the workday, the uniform changing time is compensable, regardless of whether they can change at home. Pl. Brief at 14-15.

(Communications Plaintiffs and Civil Clerks). This does nothing to rebut the testimony that Plaintiffs do *in fact* arrive before the start of their scheduled shifts and perform compensable work prior to clocking in. Again, what is relevant for establishing FLSA liability is whether Plaintiffs were *permitted* to perform pre-shift work, not whether there are policies mandating pre-shift work. Regardless, Defendant's denials fail to create a genuine issue of material fact.

Further, Defendant cannot avoid summary judgment by arguing, without support, that "Plaintiffs are not permitted to perform work prior to the start of their scheduled shifts and Defendant is not aware of any work being performed prior to the start of their scheduled shifts," *id.* ¶ 162. As explained further below, it is simply false that Defendant is unaware of the work, and in any event, Defendant has constructive knowledge of such work. Moreover, the possible existence of policies prohibiting pre-shift work does not absolve Defendant of liability, nor does it create a genuine dispute of fact. The Department of Labor has specifically addressed this issue:

> In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. … The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

29 C.F.R. § 785.13. Likewise, the Second Circuit has explicitly found that such rules, including those requiring pre-approval for overtime, do not absolve the employer of their burden to stop employees from performing work to avoid liability. *Chao v. Gotham Registry Inc.*, 514 F.3d 280, 288 (2d Cir. 2008); *see also id.* at 291 ("if [the employer] were serious about preventing unauthorized overtime, it could discipline [employees] who violate the rule."); *Kuebel*, 643 F.3d at 365; *Reich v. Dep't of Conservation*, 28 F.3d 1076, 1084 (11th Cir. 1994) (finding that a rule forbidding overtime does not preclude recovery under the FLSA as the employer cannot avoid overtime compensation by adopting a policy and issuing warnings, without enforcement).

3

To the extent such policies might exist, they are not enforced by the County in any way – Plaintiffs perform pre-shift work, they are expected to perform such work, and they are not stopped from performing the work or disciplined for doing so. SOF ¶¶ 67-69, 107-111, 130. Whether or not supervisors are expected to prevent pre-shift work is not relevant, because in practice they do not. *Id.* Defendant provides no evidence to the contrary.

Defendant is also wrong in stating that "an employee who punches in to work prior to seven minutes before the start of their shift will be compensated." Def. Opp. at 3. This statement ignores the undisputed testimony from the County and from Plaintiffs that Plaintiffs ***are not permitted*** to clock in until 7 minutes prior to the start of their shift, and that this policy *is* enforced. SOF ¶ 16, Def. Response to SOF ¶ 16. Moreover, the County testified that if someone were to clock in 15 minutes prior to the start of their scheduled shift, that overtime work would not be approved for pay. Ex. A (Bessette Rule 30(b)(6) Tr. 38-39). Setting aside the rare occasions when an employee may be specially mandated to work pre-shift, which is the situation Defendant references, Def. Response to SOF ¶ 81, Defendant submits no evidence that Plaintiffs are permitted to clock in earlier than 7 minutes on a regular basis, or that the County will pay for the daily pre-shift overtime at issue here. Because the undisputed record demonstrates that Plaintiffs perform compensable, but unpaid, pre-shift work and that Defendant does not prevent that work, liability is established.

### III. Defendant had Actual and Constructive Knowledge of Pre-Shift Work

Defendant also fails to create a genuine dispute of material fact concerning whether Defendant had actual or constructive knowledge of Plaintiffs' overtime work. Defendant summarily asserts that "there is no documented evidence to show that Defendant knew or should have known that Plaintiffs are alleging they are performing work activities prior to being punched in for their shifts." Def. Opp. at 4. This statement ignores deposition testimony establishing that Defendant has actual knowledge of Plaintiffs' pre-shift work. SOF ¶¶ 134, 136.

4

Defendant denies SOF ¶ 134 by stating that there "could" be Lieutenants in the briefing room, and that there was "no mention of pre or post shift work" during the deposition question. Def. Response to SOF ¶ 134. However, the transcript belies this statement, as it reads, "[a]t the beginning of a shift when the assignments are being posted, the corrections officers are reporting to the briefing and equipment room to review their posts, are there any other supervisors above a shift supervisor who would typically be in the briefing room," to which the County answered, "I mean, a Lieutenant could be present." SOF ¶ 134. This question *explicitly mentions* pre-shift work of posting assignments and reviewing posts. Similarly, in responding to SOF ¶ 136, Defendant states that "Steven Gordon testified he had no reason to believe work was being performed prior to a scheduled shift," which does nothing to rebut the fact that Gordon, who directly supervises Desk Officers and Desk Sergeants, *also* testified that he has witnessed shift exchanges prior to the scheduled shift start time and has not stopped them from occurring. Def. Responses to SOF ¶ 136.

Moreover, the record establishes that Defendant had constructive knowledge of Plaintiffs' pre-shift work, given the County's **admissions** that Plaintiffs work *de facto* overlapping shifts, and that Defendant has multiple means to see who is working at any given time. Def. Response to SOF ¶¶ 131-133, 137-138. This is more than enough to establish that, through reasonable diligence, Defendant had constructive knowledge of pre-shift overtime; it does not matter whether such means are used for timekeeping purposes. *See, e.g.*, *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 F. App'x 448, 455 (5th Cir. 2009) ("Constructive knowledge exists if by exercising reasonable diligence an employer would become aware that an employee is working overtime."); *Hertz v. Woodbury Cty.*, 566 F.3d 775, 781 (8th Cir. 2009) ("if the County, through reasonable diligence, should have acquired knowledge that Plaintiffs were working in excess of their scheduled hours, the jury would have been empowered to find the County liable.").

5

Defendant relies on two cases – *Scott* and *Worley* – in arguing that it allegedly "had no reason to believe any work activities were being performed prior to the start of an employees scheduled shift." Def. Opp. at 4. Not only does *Scott v. City of New York* not support this statement, it actually supports **Plaintiffs' argument** that Defendant had actual or constructive knowledge. In *Scott*, the Court held that "completion of time sheets is *one way* that employees can provide their employer with knowledge of overtime, but the failure to record overtime on time sheets does not necessarily doom a back pay claim." 592 F. Supp. 2d 501, 504 (S.D.N.Y. 2008) (emphasis supplied). Moreover, the Court held a jury might reasonably conclude that the City had knowledge of overtime work if it is true that it had a policy of forbidding employees from completing overtime slips for less than fifteen minutes and that an officer could not abandon a task at the close of a shift. *Id.* The same is true here – Defendant admits that it has a policy of not allowing Plaintiffs to clock in until 7 minutes prior to the start of their shift so it can always round down and not pay for that pre-shift work time, that there is a *de facto* overlap between the shifts, and Plaintiffs cannot leave their post until properly relieved. Def. Response to SOF ¶¶ 16, 32, 77, 78.

Defendant also cites *Worley v. City of New York*, in which the Court denied plaintiffs' motion for summary judgment on pre-shift work, finding that there was a triable issue of fact as to whether plaintiffs performed such work. 2020 WL 730326, at *6 (S.D.N.Y. Feb. 12, 2020). The facts of *Worley*, however, are clearly distinguishable. There, the Court found a lack of knowledge because there was testimony that the plaintiffs' supervisors were "sometimes located at different schools, or were located at the same school but either arrived at a different time or worked on a different tour." *Id.* Here, however, the record shows Defendant had actual knowledge of Plaintiffs' pre-shift work as well as the multitude of ways that Defendant has constructive knowledge of such work. SOF ¶¶ 131-138. Additionally, Defendant's "defense" that employees are trained on accurate

6

timekeeping does not create a genuine dispute of fact. Def. Opp. at 4. The Second Circuit has explicitly rejected attempts by employers to avoid liability by relying on an overtime request system. "Once an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours." *Kuebel*, 643 F.3d. at 363. An "employee's failure to report work the employer in fact knew about or required does not protect the employer from FLSA liability." *Perry v. City of New York*, 78 F.4th 502, 513 (2d Cir. 2023). The County cannot delegate its FLSA recordkeeping duties to its employees. 29 U.S.C. § 211(c).

### IV. The County Fails to Establish a Genuine Dispute that they Failed to Properly Calculate the Regular Rate of Pay for Overtime

Defendant's sole defense to Plaintiffs' regular rate claim is that the Collective Bargaining Agreement (CBA) allegedly instructs the County to pay Plaintiffs' overtime correctly. Def. Opp. at 5, Def. Response to SOF ¶¶ 139-141. The premium payments at issue in this case are shift differentials, cash payments in lieu of health insurance benefits, Rabies Clinic premiums, Field Officer Training Premiums, Officer in Charge premiums, and retroactive pay increases. SOF ¶¶ 143-144.[3] Contrary to Defendant's assertions, the CBA does not address whether these premiums are included in the regular rate of pay when the County calculates overtime. The mere fact that the County pays retroactive pay increases – or any of these other premiums – does not establish that the County actually included these premium payments in Plaintiffs' overtime calculation for the corresponding time period or that it provided Plaintiffs' with appropriate backpay for any additional overtime compensated owed as a result of the retroactive pay increases.

---

[3] Plaintiffs agree that, according to the CBA, longevity pay is included in the base salary – however, that is not part of Plaintiffs' allegations that Defendant failed to calculate the regular rate of pay.

Regardless, it is irrelevant whether the CBA incorporates the correct law regarding the calculation of overtime pay, as liability is based on whether Defendant ***actually paid*** Plaintiffs overtime at the correct rate. Plaintiffs' expert, Dr. Louis Lanier, analyzed Defendant's pay data and found that Plaintiffs' overtime rate was not computed correctly. SOF ¶¶ 142-144. Defendant did not depose Plaintiffs' expert, did not submit an expert report, and provides no record citations proving that it did in fact properly calculate Plaintiffs' regular rate. Put simply, Defendant does the overtime math incorrectly and fails to provide evidence to the contrary. Therefore, Defendant fails to establish a genuine issue of material fact, and Plaintiffs are entitled to summary judgment on this ground.

### V.     Plaintiffs Are Entitled to Summary Judgment on the Late Payment Claim

Defendant's defense on the late payment claim is that as a "general practice" overtime is paid one week after the employee performs it, and that if there was a mistake, the employee would be paid the next pay period. Def. Opp. at 5-6. Defendant seems to misunderstand both Plaintiffs' claim and the FLSA. Plaintiffs are not claiming that Defendant's general practice of paying overtime is unlawful. Rather, Plaintiffs argue that Defendant does not always pay overtime in a timely manner, and, on those occasions, as Second Circuit caselaw firmly establishes, it violates the FLSA. *See Accosta v. Lorelei Events Grp. Inc.*, 2022 WL 195514, at *4 (S.D.N.Y. Jan. 21, 2022) (two weeks is an unreasonable amount of time for an employer to delay pay); *see also Rogers v. City of Troy*, 148 F.3d 52, 55 (2d Cir. 1998) (the FLSA "include[s] a prompt payment requirement"). Plaintiffs testified that they have been paid overtime late. SOF ¶ 147. Rather than submitting any contradictory evidence, Defendant simply denies the facts and states: "Defendant will cut a check to an employee if overtime will not make it into their paycheck for that week." Def. Response to SOF ¶ 147. This does not rebut Plaintiffs' testimony and does not establish that Defendant complies with the FLSA's prompt payment requirements.

8

That Defendant may pay overtime in a timely manner much or most of the time is not enough to evade liability when there is evidence that Defendant pays late on occasion. *See Lynch v. City of New York*, 291 F. Supp. 3d 537, 551 (S.D.N.Y. 2018) (finding that compliance 94% of the time is "inadequate to evade liability" because it is not "100%"). Therefore, Plaintiffs are entitled to summary judgment.

### VI. Defendant Fails to Create a Genuine Issue of Material Fact as to Whether Plaintiffs are Entitled to Liquidated Damages

Plaintiffs are entitled to an "equal amount" of their unpaid overtime compensation as liquidated damages, 29 U.S.C. § 216(b), because Defendant failed to create a genuine issue of material fact as to whether it can demonstrate good faith and reasonable grounds for believing that the County did not violate the FLSA. *United States v. Sabhnani*, 599 F.3d 215, 269 (2d Cir. 2010). Astonishingly, Defendant ***admits*** that it failed to take actions that would show good faith compliance with the FLSA. SOF ¶¶ 149, 153, 156, 158, 168, Def. Response to SOF ¶¶ 149, 153, 156, 158, 168. Most of Defendant's alleged denials of the undisputed facts simply state that "Plaintiffs are not performing work functions prior to the start of their scheduled shift and Defendant is not aware of any work being performed prior to the start of their scheduled shift," or some variation of that statement. Def. Response to SOF ¶¶ 150, 152, 154, 159, 160, 162. As noted above, this statement is simply false. *See supra* Sections II-III. Moreover, it does not create a genuine dispute as to Plaintiffs' entitlement to liquidated damages, as the County's responses are unrelated to whether Defendant complied, or attempted to comply, with the FLSA. Whether Defendant believed no pre-shift work was being performed has no bearing on whether the County performed any studies of the time it takes to perform pre-shift work, on whether such work is compensable, or on whether it took steps to determine if its pay practices comply with the FLSA.

9

Defendant also asserts it "presented evidence challenging showing [sic] good faith reliance on advice from counsel that their policies and practices were compliant with the FLSA." Def. Opp. at 6. The County is wrong and appears to misunderstand the advice of counsel defense. To benefit from an advice of counsel defense to liquidated damages, "a party must show that he (1) 'honestly and in good faith' sought advice of counsel; (2) 'fully and honestly la[id] all the facts before his counsel'; and (3) 'in good faith and honestly follow[ed]' counsel's advice, believing it to be correct and intending that his acts be lawful." *U.S. v. Colasuanno*, 697 F.3d 164, 181 (2d Cir. 2012) (quoting *Williamson v. United States*, 207 U.S. 425, 453 (1908)). Defendant cannot satisfy any of these elements. The County's witness specifically testified that they never sought advice of counsel other than in response to this litigation as to whether its pay practices are compliant with the FLSA SOF ¶ 166.[4] For an advice of counsel defense to be successful, the advice and reliance on the advice must have occurred *prior to the alleged violations*, which as noted above is not the case here. *See, e.g.*, *Smith v. Assocs. in Behavioral Counseling, P.C.*, 2012 WL 5198359, at *6 (S.D. Ind. Oct. 19, 2012).

Therefore, Defendant has failed to present any evidence that would allow them to avoid an otherwise mandatory award of 100% liquidated damages on all claims.

## VII. Conclusion

Because Defendant has failed to establish any genuine issues of material fact, Plaintiffs respectfully request that this Court grant their Motion for Summary Judgment on Liability.

---

[4] When asked "Did the County seek any advice separate and apart from the lawsuit with – with respect to whether its pay policies and practices for employees in the Sheriff's Department are compliant with the FLSA?" the County FRCP 30(b)(6) witness answered "Not – not to my knowledge. No. Not on this issue. Not – not to the issues relative to this case." SOF ¶ 166.

10

Dated: February 21, 2025  Respectfully submitted,

*/s/ Gregory K. McGillivary*
Gregory K. McGillivary
Sarah M. Block
Rachel Lerner
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., N.W., Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
smb@mselaborlaw.com
gkm@mselaborlaw.com
rbl@mselaborlaw.com

Howard G. Wien
ISAACS DEVASIA CASTRO & WIEN LLP
80 Broad Street, 5th Floor
New York, NY 10004
Phone: (917) 551-1300
hwien@idcwlaw.com

## CERTIFICATE OF SERVICE

    I certify that on February 21, 2025, a copy of the foregoing document was served on the following counsel of record via ECF filing:

> John D. Wright
> Bartlett, Pontiff, Stewart & Rhodes, P.C.
> P.O. Box 2168
> One Washington Street
> Glens Falls, NY 12801
> jdw@bpsrlaw.com

                                                  */s/ Gregory K. McGillivary*
                                                Gregory K. McGillivary